IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
*Southern Division*

| | | |
|---|---|---|
| **JOANN FRANKLIN,** | * | |
| Plaintiff, | * | |
| v. | | Case No.: GJH-18-3341 |
| | * | |
| **WAL-MART, INC.,** *et al.*, | | |
| | * | |
| Defendants. | | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION

Plaintiff JoAnn Franklin brings this action against Defendants Wal-Mart, Inc., Wal-Mart Associates, Inc., and Wal-Mart Stores East, LP (collectively, "Walmart"), alleging claims of negligence and informed consent claims. ECF No. 1-6. Pending before the Court is Defendants' Partial Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6). ECF No. 5. No hearing is necessary. *See* D. Md. Local R. 105.6. For the following reasons, Defendants' Partial Motion to Dismiss is GRANTED.

**I.  BACKGROUND**

In 2014 and 2015, Franklin filled her prescriptions for lithium carb at the Walmart pharmacy located at 1 Frankel Way, Cockeysville, Maryland. ECF No. 1-6 ¶¶ 7, 9–10. On March 24, 2015, Franklin's doctor prescribed her hydrochlorothiazide and sent the order to the Walmart pharmacy on Frankel Way. *Id.* ¶ 11. Approximately four days later, the pharmacy filled the prescription for hydrochlorothiazide. *Id.* ¶ 12.

Franklin alleges that when she picked up the hydrochlorothiazide, the Walmart pharmacist failed to warn her of the dangers associated with taking hydrochlorothiazide and

lithium together, such as lithium toxicity. *Id.* ¶ 13. She also alleges that the pharmacist failed to confirm with her primary care provider that it was appropriate for her to be on the two medications at the same time. *Id.* ¶ 14.

On April 3, 2015, Franklin was admitted to St. Joseph Medical Center with a diagnosis of lithium toxicity and hydrochlorothiazide-induced pancreatitis. *Id.* ¶ 16. After being placed on IV fluids and given anti-nausea medication, she was discharged and instructed not to take either medication. *Id.* ¶ 17. In the following weeks, Franklin continued to suffer from the effects of lithium toxicity and developed "a variety of severe and life-threatening conditions." *Id.* ¶¶ 18, 22.

Franklin alleges that the pharmaceutical warnings for hydrochlorothiazide include that it should not be taken in combination with lithium due to the combination causing increased lithium levels. *Id.* ¶ 20. She further asserts that the warnings indicate that patients should be closely monitored for toxicities if the two medications are administered together. *Id.*

On March 29, 2018, Franklin filed her initial Complaint in the Circuit Court for Baltimore County, Maryland. ECF No. 1-2. She filed her Amended Complaint on August 6, 2018. ECF No. 1-6. Defendants then removed the case to this Court, ECF No. 1, and moved to dismiss Count II (Informed Consent) of the Amended Complaint, ECF No. 5.

## II. STANDARD OF REVIEW

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

*Iqbal*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555 ("a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do.")).

The purpose of Rule 12(b)(6) "is to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006) (citation and internal quotation marks omitted). When deciding a motion to dismiss under Rule 12(b)(6), a court "must accept as true all of the factual allegations contained in the complaint," and must "draw all reasonable inferences [from those facts] in favor of the plaintiff." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (citations and internal quotation marks omitted). The Court need not, however, accept unsupported legal allegations, *see Revene v. Charles County Comm'rs*, 882 F.2d 870, 873 (4th Cir. 1989), legal conclusions couched as factual allegations, *Papasan v. Allain*, 478 U.S. 265, 286 (1986), or conclusory factual allegations devoid of any reference to actual events. *United Black Firefighters of Norfolk v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979).

## III. DISCUSSION

Franklin alleges that Walmart, through its pharmacist, failed to obtain her informed consent to the use of hydrochlorothiazide by not warning her of the risks associated with taking it and lithium at the same time. ECF No. 1-6 ¶¶ 24(D), 27. Defendants argue that Franklin's informed consent claim fails as a matter of law because they did not have a physician-patient relationship with Franklin and thus had no duty to obtain informed consent. ECF No. 5-1 at 4. Franklin responds that the informed consent doctrine applies not only to physicians, but to

3

pharmacists too. ECF No. 8-1 at 2–10. Because the Maryland Pharmacy Act and relevant case law do not support extending the informed consent doctrine to pharmacists, Franklin's informed consent claim is dismissed.

### A. The Maryland Pharmacy Act Does Not Impose a Duty on Pharmacists to Obtain Informed Consent.

Franklin asserts that various sections of the Maryland Pharmacy Act require pharmacists to obtain informed consent before dispensing prescription medication. ECF No. 8-1 at 3–6. The Court disagrees.

Franklin first argues that the duty arises by implication from the definition of "pharmaceutical care," which "may include patient counseling and providing information to licensed and certified health care providers." *Id.* at 3 (quoting Md. Code Ann., Health Occ. § 12-101(r) (West 2017)). Based on this language, Franklin concludes that "pharmacists in Maryland are providing care to patients that includes providing and disclosing information to patients." *Id.* To the contrary, however, the statute explicitly states that pharmaceutical care "*may* include . . . providing information *to licensed and certified health care providers*," not to patients. Md. Code Ann., Health Occ. § 12-101(r) (emphasis added). Moreover, although pharmaceutical care "may" include patient counseling, the word "may" is "generally understood as permissive, as opposed to mandatory, language." *Brodsky v. Brodsky*, 570 A.2d 1235, 1237 (Md. 1990). Thus, there is no obligation to provide patient counseling.

Franklin next relies on the definition of "practice pharmacy," which means to engage in any of the following activities:

(i) Providing pharmaceutical care;
. . . .

4

> (iv) Monitoring prescriptions for prescription and nonprescription drugs or devices;
> (v) Providing information, explanation, or recommendations to patients and health care practitioners about the safe and effective use of prescription or nonprescription drugs or devices; or
> (vi) Identifying and appraising problems concerning the use or monitoring of therapy with drugs or devices.

ECF No. 8-1 at 4 (quoting Md. Code Ann., Health Occ. § 12-101(x)(1)(i), (iv)–(vi)). To engage in an activity, however, does not mean that one is required to do so.

Franklin argues that because pharmacists, like physicians, must be licensed, pass an exam, and maintain continuing education requirements, the doctrine of informed consent should apply to them. *Id.* (citing Md. Code Ann., Health Occ. §§ 12-302, 12-304, 12-309). The Court is not persuaded that these characteristics, which are common to many professions, lead to the conclusion that there is a duty on pharmacists to obtain informed consent.

Franklin also highlights the fact that pharmacists may refuse to fill a prescription based on their professional judgment. *Id.* at 4–5 (citing Md. Code Ann., Health Occ. § 12-501(a)). This authorization is inapposite to the situation here where the pharmacist did fill the patient's prescription.

Franklin finds additional support for her argument in Section 12-502 of the Maryland Pharmacy Act, which states that "only a licensed pharmacist . . . may provide information to the public or a health care practitioner concerning prescription or nonprescription drugs or devices including information as to their therapeutic values, potential side effects, and use in the treatment and prevention of diseases." *Id.* at 5 (quoting Md. Code Ann., Health Occ. § 12-502). However, as noted above, the word "may" connotes permissive authority rather than mandatory action. *See Brodsky*, 570 A.2d at 1237. Pharmacists are thus not required to provide information about potential side effects pursuant to this section.

5

Lastly, Franklin points to Section 12-507 of the Maryland Pharmacy Act, which states that a pharmacist "who provides prescription services to medical assistance recipients shall offer to discuss . . . any matter which, in the exercise of the pharmacist's professional judgment, the pharmacist deems significant." ECF No. 8-1 at 5–6 (quoting Md. Code Ann., Health Occ. § 12-507(a)). The statute notes that such matters "may include . . . [c]ommon severe side or adverse effects or interactions and therapeutic contraindications that may be encountered, including their avoidance, and the action required if they occur[.]" Md. Code Ann., Health Occ. § 12-507(a). It further states that the offer to discuss can be accomplished by

> (1) A face-to-face communication with the pharmacist; or (2) At least 2 of the following: (i) A sign posted so it can be seen by patients; (ii) A notation affixed to or written on the bag in which the prescription is to be dispensed; (iii) A notation contained on the prescription container; or (iv) Communication by telephone.

*Id.* § 12-507(b). An offer to discuss and a duty to inform are two distinct obligations. Moreover, the passive means through which pharmacists can satisfy their duty pursuant to Section 12-507(b) stand in stark contrast to what is required of physicians to obtain informed consent. *Sard v. Hardy*, 379 A.2d 1014, 1020 (Md. 1977) (requiring physician to disclose "the nature of the ailment, the nature of the proposed treatment, the probability of success of the contemplated therapy and its alternatives, and the risk of unfortunate consequences associated with such treatment"). While the sections cited by Franklin demonstrate that pharmacists in Maryland are trusted professionals with varied responsibilities, they cannot be reasonably read to impose a legal duty of informed consent.

### B. Case Law Does Not Apply the Informed Consent Doctrine to Pharmacists.

Citing to *Sard v. Hardy*, 379 A.2d 1014 (Md. 1977) and *Shannon v. Fusco*, 89 A.3d 1156 (Md. 2014), Franklin contends that Maryland case law supports her argument that pharmacists are subjected to informed consent claims. ECF No. 8-1 at 6–8. *Sard* was the first case in which

6

the Court of Appeals of Maryland acknowledged a claim of informed consent against a physician and spoke to the scope of the duty and whether expert testimony is required to present such a claim. *Sard*, 379 A.2d at 1019–20. *Shannon* concerned whether a pharmacist was qualified to testify in an informed consent action against a physician. *Shannon*, 89 A.3d at 1171–75 (rejecting argument that a "pharmacist is *per se* unqualified to testify in an informed consent action when a physician has been sued").

Neither of the cited cases discuss whether the doctrine of informed consent applies to a pharmacist. Based on this Court's review and the parties' briefs, no Maryland court has been presented with this precise issue.[1] If the highest state court has not directly addressed an issue, a federal court "must anticipate how it would rule." *Liberty Univ., Inc. v. Citizens Ins. Co. of Am.*, 792 F.3d 520, 528 (4th Cir. 2015). Based on the Maryland Pharmacy Act and case law, the Court finds that the informed consent doctrine does not apply to pharmacists.

In Maryland, "the doctrine of informed consent imposes on a physician, before he subjects his patient to medical treatment, the duty to explain the procedure to the patient and to warn him of any material risks or dangers inherent in or collateral to the therapy." *Sard*, 379 A.2d at 1020. This duty was imposed on the physician because "unlike the physician, the patient is untrained in medical science, and therefore depends completely on the trust and skill of his

---

[1] One state court case addressing a similar, but not directly on point, issue is *Howell v. Spokane & Inland Empire Blood Bank*, 785 P.2d 815 (Wash. 1990) (en banc). There, after surgery, the plaintiff's surgeon ordered two blood transfusions for the plaintiff-patient, who subsequently tested positive for human immuno deficiency virus (HIV). *Id.* at 817. The plaintiff alleged that the hospital, where his surgery took place, failed to inform him of the potential risk of exposure to HIV via blood transfusions. *Id.* The court held that the hospital did not have a duty to secure informed consent from the plaintiff even though the applicable state statute included hospitals as "health care providers" and placed a duty on them to obtain informed consent. *Id.* at 822–23. The court reasoned that "[t]o provide for equal informed consent obligations as to every person and entity falling within the definition would not be justified." *Id.* at 822. The Washington Supreme Court further stated that "[i]t is the duty of the physician to inform patients of the risks, general or specific, involved in surgical procedures." *Id.* at 823. In Maryland, pharmacists do not fall within the definition of "health care providers," so the argument that the informed consent doctrine should apply to them is even more attenuated here.

physician for the information on which he makes his decision." *Id.* In 2009, the Court of Appeals of Maryland broadened the application of the doctrine to impose the duty on "health care providers" more generally. *McQuitty v. Spangler*, 976 A.2d 1020, 1022 (Md. 2009) (holding that a patient may assert an informed consent claim "because it is the duty of a *health care provider* to inform a patient of material information" (emphasis added)).

Because pharmacists are not included in the statutory definition of "health care providers," *see* Md. Code Ann., Cts. & Jud. Proc. § 3-2A-01(f)(1) (West 2011), and the informed consent doctrine has only been extended to "health care providers," the Court finds that pharmacists are under no obligation to secure informed consent.

### IV. CONCLUSION

For the foregoing reasons, Defendants' Partial Motion to Dismiss, ECF No. 5, is granted. A separate Order shall issue.

Date: <u>July 1, 2019</u>  /s/_____
GEORGE J. HAZEL
United States District Judge